IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:16-CV-123-D

| | | |
|---|---|---|
| BETHANY LANEY SCHILLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Bethany Laney Schilling ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 16, 20. Both filed memoranda in support of their respective motions. D.E. 18, 21. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 30 Jan. 2017 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## I.    BACKGROUND

### A.    Case History

Plaintiff filed an application for DIB on 31 October 2008, alleging a disability onset date of 2 October 2006. Transcript of Proceedings ("Tr.") 16.[1] She later amended her onset date to 5 November 2008. Tr. 16. The application was denied initially and upon reconsideration, and a

---

[1] Various documents from the pre-remand proceedings on plaintiff's application appear at two places in the administrative record. *See* Tr., Ct. Tr. Index 1, 3.

request for a hearing was timely filed. Tr. 16. On 7 February 2011, a video hearing ("2011 hearing") was held before an administrative law judge ("ALJ") (Regina L. Warren), at which plaintiff, appearing with counsel, and a vocational expert ("VE") testified. Tr. 26-61. The ALJ issued a decision denying plaintiff's claim on 25 February 2011. Tr. 16-25.

Plaintiff requested review by the Appeals Council. Tr. 10. On 28 June 2011, the Appeals Council admitted into the record additional evidence, but denied the request for review. Tr. 1-5. The ALJ's decision thereby became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On 22 August 2011, plaintiff appealed to this court. *See* Compl. (D.E. 1), *Schilling v. Colvin*, No. 7:11-CV-176-FL (E.D.N.C.). On 26 March 2013, the court entered an order remanding the case for full consideration of the records and medical opinions of Kenny Barrow, a physician's assistant who treated plaintiff. *Schilling*, 2013 WL 1246772 (26 Mar. 2013) (copy at Tr. 697-708). In response to the court's order, on 6 December 2013, the Appeals Council vacated the 2012 decision and remanded the case to an ALJ for the conduct of another hearing and issuance of a new decision. Tr. 709-11.

Pursuant to the remand, a hearing was held on 4 March 2015 ("2015 hearing") before a different ALJ (Thomas G. Henderson) than the one who presided at the 2011 hearing. Tr. 650-69. Plaintiff, again represented by counsel, and a VE different than the one appearing at the 2011 hearing testified. The ALJ issued a decision denying plaintiff's claim on 6 April 2015. Tr. 627-42. Plaintiff timely requested review by the Appeals Council. Tr. 622. On 8 April 2016, the Appeals Council admitted additional evidence submitted by plaintiff, but refused to assume jurisdiction. Tr. 606-12. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff commenced this proceeding for judicial review of the ALJ's 2015 decision on 3 June 2016, pursuant to 42 U.S.C. § 405(g). *See* Compl. (D.E. 1). It is this decision which is the subject of this appeal.

### B.     Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical

impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

---

[2] *See also* 20 C.F.R. § 404.1545(a)(1). This regulation is the counterpart for DIB to the above-cited regulation in *Mascio*, which relates to Supplemental Security Income ("SSI"). The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416. The version of the Regulations cited herein by the undersigned is the version in effect at the time of issuance of the ALJ's 6 April 2015 decision.

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

## C.    ALJ's Findings

Plaintiff was 32 years old on the amended alleged onset date of disability and 38 years old on the date of the 2015 hearing.  *See, e.g.*, Tr. 209, 654.  The ALJ found that plaintiff has past relevant work as an accounts payable clerk.  Tr. 641 ¶ 6.

The ALJ found that plaintiff last met the insured status requirements of the Act on 31 December 2009.  Tr. 629 ¶ 1.  Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ then found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged date of onset of disability, 5 November 2008,[5] through her date last insured. Tr. 629 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairment that was severe within the meaning of the Regulations:    status post lumbar laminectomy.  Tr. 629 ¶ 3.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings.  Tr. 630-31 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b)[6] except she is limited to occasional performance of postural activities.  She can never climb ladders or scaffolds and must avoid concentrated exposure to hazards such as heights or dangerous machinery.

Tr. 631 ¶ 5.

---

[5] The decision twice incorrectly states plaintiff's alleged onset date as her initial date of 2 October 2006, Tr. 629 ¶ 2; 641 ¶ 7, but the opening section of the decision notes that she amended her onset date to 5 November 2008, Tr. 627. The decision also refers to the amended date within the decision.  *See* Tr. 634 ¶ 5; 639 ¶ 5; 640 ¶ 5.  The court concludes that use of the incorrect date was an immaterial oversight.

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702.  "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. § 404.1567.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was able to perform her past relevant work. Tr. 641 ¶ 6. The ALJ accordingly concluded that plaintiff was not disabled from the amended alleged date of onset of disability, 5 November 2008, through the date last insured, 31 December 2009. Tr. 641 ¶ 7.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III.    OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and benefits awarded or that this case be remanded for a new hearing on the grounds that the ALJ erred in evaluating her credibility and assessing the medical opinion evidence of record. Because the court finds the ALJ's assessment of plaintiff's credibility dispositive of this appeal, the court's analysis will focus on it.

## IV.    ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### A.    Applicable Legal Principles

The ALJ's assessment of claimant's credibility involves a two-step process:

> First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. [20 C.F.R.] §§ 404.1529(b), 416.929(b).    Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* §§ 404.1529(c), 416.929(c).    The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects. *Id.* §§ 404.1529(c)(4), 416.929(c)(4).

*Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); *Craig*, 76 F.3d at 594-95.    The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'"  *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[7]

In assessing a claimant's credibility, the ALJ must consider "all of the available evidence." 20 C.F.R. § 404.1529(c)(1).    The evidence that should be considered includes: the claimant's history; signs and laboratory findings; statements from the claimant, the claimant's treating and nontreating sources about how the claimant's symptoms affect the claimant, including medical opinions; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; any measures the claimant uses or has used

---

[7] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case, issued 6 April 2015.

to relieve his pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* § 404.1529(c)(1)-(3).

"[A claimant's] subjective evidence of pain intensity cannot be discounted solely based on objective findings." *Lewis*, 858 F.3d at 866; *see also* 20 C.F.R. § 404.1529(c)(2). Similarly, a claimant need not provide objective medical evidence to corroborate his allegations of pain, and to require such evidence improperly increases his burden of proof. *Id.*; *see also Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012). Thus, a claimant may rely exclusively on subjective evidence to satisfy the second step of the credibility analysis. *Lewis*, 858 F.3d at 870 (citing *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Hall*, 2012 WL 3727317, at *2 (citing *Hines*, 453 F.3d at 565 n.3); *Craig*, 76 F.3d at 595.

### B.    Analysis

Plaintiff contends that the ALJ erred in discrediting her testimony regarding her back pain. The court agrees.

In his decision, the ALJ first recited verbatim the summary of testimony appearing in the 2011 decision:

> At a February 2011 hearing, the claimant testified that she lived with her husband and two children ages six and eight. The claimant stated she first had a problem with her low back area and sacroiliac joints during her first pregnancy. She said her symptoms worsened following her last pregnancy in 2004 and she never returned to work. Beginning in fall 2008, she testified she was having trouble functioning and needed help from her parents with housework and childcare. She stated she underwent back surgery at L5-S1, which relieved some of her symptoms, but said she still has pain. The claimant reported right leg pain before surgery, although noted increasing left leg symptoms post surgery with lower back and foot pain. She said it hurt to put pressure on her left foot and she was

most comfortable with it elevated, which reduced swelling. The claimant testified the head of neurosurgery at Duke told her the disk above and below was causing pain, but any additional surgery would require a three level fusion and with her age, he recommended waiting. The claimant testified she managed pain on a daily basis with a Fentanyl patch and Percocet for breakthrough pain. The claimant stated they provided relief but enough for her to function at normal capacity. She reported her pain on medication as a 6 or 7 out of 10 and that she had drowsiness as a side effect. The claimant said she waited to take Percocet until after she picked up her children from school. If her pain was severe, she asked someone else to take them and pick them up. On a typical day, the claimant got up at 6:30 and woke her children up for school. She said they were able to dress themselves and her husband packed their lunch the night before. She stated she sometimes got them a glass of milk out of the refrigerator if she did not have to bend over and pick it up. The claimant testified she got back in bed for a couple of hours after they left. She reported spending most of the time of the couch. The claimant stated she did not have to get out of the car when she picked her children up after school. When they get home, she said they played in the backyard while she lay down. She was not able to take them for walks, but helped with their homework. She said her husband often had to go into work late to take the kids to school. She stated some days were better than others, but she was never without pain. Even on better days, the claimant was unable to do much more than pick up a few things from the store, but right after would have to lie back down. She stated she took her children shopping so they could pick up items off the lower shelves. The claimant did not do a week's worth of shopping because the cart got too heavy to push. She said her husband or children carried the groceries inside. She reported she did not vacuum or move furniture. She made her bed, but not the children's because they are bunk beds. She said her children helped her sort and load the washer and they folded the clothes together. She reported cooking three times during the week with meals taking a maximum of thirty minutes. The claimant said even if she alternated sitting and standing, she would not be able to work due to her need to lie down. She said even if she pushed herself to get through one day she would have to stay home the following day. The claimant said church was important to her, but she had missed services half of the time in the past month because of pain. The claimant testified she went to church the day prior to the hearing for an hour and a half and spent the rest of the day in bed. The claimant reported being able to drive, although said she had a lot of pain when pushing the brake pedal. She said her mother took her to doctors' appointments that were further away. The claimant said the maximum amount of time she could stay up was an hour. During the hearing, the claimant reported pain down her back into her legs. She said it was hard to get her mind off pain. The claimant testified she had been treated by a pain management specialist since 2006. She reported two different occasions since November 2010 where she had a severe flare-up, could not get out of bed and needed assistance with everything. She said the pain was so extreme it was on the same level as childbirth and that she required injections to alleviate the pain.

Tr. 632-33 ¶ 4 (reciting summary of plaintiff's testimony at Tr. 20-21 ¶ 5).

The ALJ then summarized plaintiff's testimony at the 2015 hearing:

> At the March 2015 hearing, the claimant testified that her pain was out of control in 2009. At that time, the claimant's mother helped her on a near-daily basis to take the children to school and prepare meals. Her husband was rearranging his schedule to be home more often. His employer permitted him to report to work late and sometimes leave early in order to care for the children. The claimant was originally referred to Dr. Brown because her chronic pain had worsened significantly, such that she was unable to function at all. Her right leg pain was so severe that she had to drag the leg when she walked. After the surgery, the claimant's right leg pain had improved but she had more pain in her left leg. Currently, the claimant has severe neuropathy in her right leg and both feet. She also has a nerve pain down the back of her left leg. The claimant stated that she was told a three-way fusion might help her symptoms, but that it was not recommended for a person of the claimant's age. At this point, she manages the pain with medications and by leaving the house only rarely. She drives her boys to school and spends most of her day resting at home. Throughout the period from her surgery to the present, the claimant stated that she has always required significant assistance from her mother, friends, and her husband. She has generally spent about 80% of the day lying down in an attempt to alleviate her pain. The claimant has been diagnosed with a connective tissue disease which affects all of her joints and contributes to the development of osteoarthritis, degenerative disc disease, and generalized pain. She was told that individuals with this connective tissue disease often do not recover well from surgeries, such as the back surgery she underwent in 2009. The claimant testified that since her surgery, she has generally had 1 or 2 days per week during which her pain is so severe that she has been unable to leave her bed other than to use the bathroom. When it is necessary for the claimant to leave the house to do something, such as attending the hearing, she usually takes 2 to 3 days to recover.

Tr. 633 ¶ 4.

The ALJ made the step-one finding that plaintiff's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms." Tr. 633 ¶ 4. But at step two, he found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 633 ¶ 4. The court will address each of the reasons advanced by the ALJ.

### 1.  Plaintiff's Activities of Daily Living

The first reason set forth by the ALJ for not finding plaintiff's statements to be entirely credible was her ability to perform daily activities. The ALJ stated:

> The claimant has described daily activities as of December 2008, which were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The evidence of record documents allegations and treatment for pain; however, also reveals that the claimant was able to drive, shop, cook simple meals, do some household chores, and care for her two young children. While it is apparent that the claimant's pain imposed some limitations, the evidence of record fails to support a determination that her symptoms were of disabling severity during the relevant period.

Tr. 634 ¶ 4.

Immediately following this explanation, and thereby clearly as part of his credibility assessment, the ALJ summarized the treatment records relating to plaintiff's back pain and pain management treatment during the relevant time frame. Tr. 634 ¶ 4. The ALJ concluded:

> I acknowledge that the claimant's symptoms were assessed as acute in November 2008 and that she had an antalgic gait with positive straight leg raise testing up through the date of her back surgery in February 2009. However, she described activities of daily living in December 2008 including caring for her 3-year old, performing activities of personal care, preparing sandwiches and frozen meals, driving to her son's school to pick him up, shopping for a few groceries, managing her finances, reading, talking on the phone or with friends who came to visit, and attending church. . . .

Tr. 635 ¶ 4.

As plaintiff argues, however, contrary to the ALJ's summary, plaintiff testified that her daily activities were more limited than he described.

For example, in her Function Report, Tr. 191-98, completed 12 December 2008, plaintiff stated that her husband has been taking her child to school because her pain prevented her from walking him to the building. Tr. 191. She reported needing to lay down for most of the day while her younger son played beside her. Tr. 191. She indicated that her parents and friends

help her take care of her children, Tr. 192, and that she could not play with her kids like she used to, Tr. 192. She stated that she could no longer prepare homemade meals, but instead made only sandwiches and frozen meals, Tr. 193, and could not do any household chores, Tr. 193. She indicated that she leaves the house only to pick up her son from school and did not have to get out of the car to pick him up. Tr. 194. She stated that she could buy only a few groceries by herself and relied on her husband's help for larger grocery purchases. Tr. 194. She reported that she is no longer able to sit through the sermon at church because of the pain. Tr. 195. She admitted to handling her own personal care, Tr. 192, and managing finances, Tr. 194.

Plaintiff's hearing testimony (at both hearings) was consistent with the Function Report. She testified that during the relevant time frame, her pain was out of control and her mother and husband helped her take her children to school and fix meals. Tr. 35, 656, 658. Her husband took the children to school because she was not able to walk them into the classroom because of the pain. Tr. 39. She reported needing to lay down for 80 percent of the day. Tr. 42, 661. She testified to having one to two days a week where she got out of bed only to use the bathroom. Tr. 663. She stated that she could not vacuum, make her children's beds, or do laundry without help. Tr. 44-45. Though church is very important to her, she misses it about half of the time because of pain. Tr. 46.

While activities of daily living are undoubtedly an important factor for the ALJ to consider, in this case, he described her activities as far less restrictive than that testified by plaintiff and seemingly cherry-picked the activities she was capable of performing while simultaneously ignoring the overall description of her normal activity level. *Hines*, 453 F.3d at 565–66 (holding it error for ALJ to "selectively cite[] evidence concerning tasks which [plaintiff] was capable of performing" while ignoring further testimony that plaintiff was in pain all the

time); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Where an ALJ's summary of a plaintiff's self-described activities is an unfair characterization, it is not supported by substantial evidence. *Hayward v. Colvin*, No. I:13CV597 LMB/TRJ, 2014 WL 6705476, at *7 (E.D. Va. 26 Nov. 2014). Here, the court finds that the ALJ's summary of plaintiff's daily activities suffers from this flaw.

## 2. Treatment Records

In addition to considering plaintiff's activities of daily living, the ALJ found that plaintiff's treatment records did not support her allegations of pain. After acknowledging that plaintiff's symptoms were acute from November 2008 until her back surgery in February of 2009, the ALJ stated:

> Treatment records from March 2009 through her date last insured of December 2009 document that the claimant continued to complain of back and leg pain. However, despite her allegations of symptoms of disabling severity, physical examinations generally revealed mild findings and the claimant admitted some improvements. Straight leg raise testing was negative and the claimant had a normal gait. At times, she admitted that she was fairly comfortable with reasonable control and good relief from her pain medication regimen. Although I acknowledge that the claimant reported several episodes of incapacitating pain in October 2009 and December 2009, it does not appear that she accepted the offer for referral to physical therapy during that period, which suggests that her symptoms were not as severe as alleged.

Tr. 635-36 ¶ 4. Substantial evidence does not support the ALJ's reasoning.

First, the ALJ notes that treatment records from March of 2009 through December of 2009 show physical examinations with mild findings, negative straight-leg-raising testing, and a normal gait. While the treatment records in that time frame do reflect some such findings, those same records also document plaintiff presenting with complaints of extreme pain, prescription pain medication, and discussion of potential alternative treatments for her.

For example, on 12 March 2009, plaintiff was seen at Coastal Rehabilitation Medicine Associates regarding her "significant back pain" described as "aching, shooting, sharp, exhausting, and miserable." Tr. 427. She was taking 20 mg of oxycontin twice a day and averaging two percoset a day for breakthrough pain. Tr. 427. She described her pain level as an average of 7/10. Tr. 427. The potential use of a spinal cord stimulator was discussed but deferred to allow time for further healing from surgery. Tr. 428. A 9 April 2009 record reported the same average pain level of 7/10 and the onset of neuropathic pain symptoms in her feet and ankles. Tr. 424-25. On 23 April 2009, she underwent a left L5 transforaminial epidural steroid injection, Tr. 422, with little relief, Tr. 419. On 6 May 2009, she reported more pain in the left L5 and S1, and again a pain level of 7/10. Tr. 419. She also indicated occasionally experiencing some burning pain across her midback area with prolonged standing. Tr. 419. A dorsal column spinal cord stimulator was again discussed. Tr. 420. On 5 June 2009, plaintiff described her average pain as a 6/10 and reported more pain in the left L5 and S1 dermatome in comparison to what she experienced prior to surgery. Tr. 415. On 24 June 2009, she again described her average pain as 6/10 and noted that she continued to have left leg pain and discomfort following surgery. Tr. 412.

At a 29 July 2009 visit, plaintiff reported continued pain. Tr. 410. Alternatives for prolotherapy for the S1 joint dysfunction and the spinal cord stimulator were discussed, though both were dependent on whether she was planning to have another child. Tr. 410. Her average pain remained at 6/10 on 26 August 2009 and she was continued on a medication regimen of oxycontin and two breakthrough hydrocodone per day, along with nerontin and occasional ambien for insomnia. Tr. 406-07. At a 22 October 2009 appointment, it was noted that "[d]espite her pain management regimen she indicates she's had at least several days where she

was nearly incapacitated because of the pain and tearful with decline in function." Tr. 403. She indicated "frustration with having to take the pain medications but does not feel she would be able to function otherwise." Tr. 403. A 14 December 2009 record reflects another exacerbation of pain in her lower back, gluteal, and leg "to the point that she was bedridden for a few days without any precipitating event." Tr. 401. She noted that her "pain control is suboptimal to allow for function." Tr. 401. Further, the 14 December 2009 record notes that although the potential benefits of therapy were discussed, plaintiff indicated that she is unsure if she could tolerate it "because of the amount of pain." Tr. 402.

The ALJ is required to consider all relevant medical evidence and may not hone in only on objective findings that support his conclusion while overlooking contrary information contained in the same record. *See Lewis*, 858 F.3d at 869. There, the Fourth Circuit held it error for the ALJ to cite to medical records that contained "normal" findings, but fail to mention that the same records noted that the plaintiff presented with stabbing, constant pain, and marked discomfort. 858 F.3d at 869. As the foregoing discussion indicates, the ALJ here engaged in precisely this improper practice.

Further, the ALJ concluded that plaintiff's decision to reject a referral for physical therapy during the latter part of 2009 "suggests that her symptoms were not as severe as alleged." Tr. 636 ¶ 5. This conclusion, though, is directly contradicted by the 14 December 2009 record which reflects that the rejection of physical therapy was based on her concern whether she could tolerate the pain. Tr. 402. If anything, this credits her allegations of pain rather than refutes them.

On the whole, the ALJ's analysis suffered from the flaw of cherry-picking information from treatment records while ignoring the full context of the information contained therein. This error also undercuts a finding that substantial evidence supports his determination on credibility.

### 3.    Duration of Impairment for 12 Months

Additionally, in connection with his findings on plaintiff's activities of daily living, the ALJ concluded that there was no evidence that her condition persisted for 12 consecutive months:

> I acknowledge that the claimant's symptoms were assessed as acute in November 2008 and that she had an antalgic gait with positive straight leg raise testing up through the date of her back surgery in February 2009. However, she described activities of daily living in December 2008 including caring for her 3-year old, performing activities of personal care, preparing sandwiches and frozen meals, driving to her son's school to pick him up, shopping for a few groceries, managing her finances, reading, talking on the phone or with friends who came to visit, and attending church. Even if I assumed the claimant's limitations might have been somewhat more severe immediately prior to her surgery and during her recovery period, there is no evidence in the record that this condition persisted for 12 consecutive months as required by 20 CFR 404.1509.

Tr. 635 ¶ 5.  Section 404.1509 sets out the duration requirement, based on 42 U.S.C. § 423(d)(1)(A), that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The ALJ's finding at step two that plaintiff's status post lumbar laminectomy was a severe impairment implicitly acknowledged that the impairment met the duration requirement of § 404.1509. *Lewis v. Colvin*, No. 1:15CV588-TDS-JEP, 2016 WL 6496245, at *3 (M.D.N.C. 2 Nov. 2016) ("'Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities.'" (quoting *Rivera v. Astrue*, No. 1:12-cv-1095-CBD, 2013 WL 4507081, at *7 (D. Md. 22 Aug. 2013))), *mem. & recomm.*

*adopted*, J. (D.E. 20) (14 Dec. 2016). It is unclear on what basis the ALJ now appears to contend

that plaintiff's condition did not satisfy the requisite duration or how this undercuts her general

credibility. On remand, the ALJ should resolve this apparent inconsistency.

### 4. Subsequent Treatment Records

Finally, as an additional reason to discredit plaintiff's testimony, the ALJ pointed to

plaintiff's medical records subsequent to her date last insured, 31 December 2009. The ALJ

summarized plaintiff's treatment records following her date last insured as follows:

> In sum, the medical records subsequent to the claimant's date last insured
> document ongoing pain management treatment, which was generally noted to
> provide adequate relief of the claimant's residual symptoms post lumbar
> laminectomy. There is no record that the claimant's symptoms worsened enough
> for her to seek additional medical treatment until April 2014, when she returned
> for neurosurgical follow up. Despite the claimant's more recent diagnoses and
> treatment, the evidence for several years after the claimant's date last insured
> showed conservative and routine pain management and does not support an
> inference that her symptoms were of disabling severity during the relevant period.

Tr. 638 ¶ 4.

While concluding that there is no record of plaintiff's symptoms worsening enough for

her to seek additional medical treatment until April 2014, elsewhere in decision, the ALJ

acknowledges that from "January 2011 through July 2014, the claimant consistently returned for

pain management treatment" and "reported chronic pain with occasional exacerbations of

symptoms, which required periodic adjustments of her medication regimen." Tr. 636 ¶ 5.

Indeed, the record is replete with treatment records for plaintiff's back pain during that time

period. The finding that she did not seek additional medical treatment until April 2014 is not

supported by the record.

Moreover, the ALJ stated that plaintiff's daily log of her pain during the month of

September 2010, eight months after her date last insured, "offers limited insight into the

claimant's condition during the relevant period." Tr. 632 ¶ 5. While retrospective consideration of medical evidence subsequent to the date last insured is appropriate, *Bird v. Comm'r of Social Security*, 699 F.3d 337 (4th Cir. 2012), it is inconsistent for the ALJ to consider only the subsequent medical information that arguably supports his determination, and outright reject other information subsequent to her date last insured on the basis that it is outside of the relevant time period.

### 5. Harmfulness

The ALJ's erroneous cherry-picking of the plaintiff's testimony and medical evidence are harmful. Proper handling of such evidence could reasonably be expected to have led to a different outcome regarding the ALJ's assessment of plaintiff's credibility and thereby the determination of plaintiff's RFC and potentially the ultimate issue of disability. *See, e.g.*, *Mascio*, 780 F.3d at 639-40 (holding that error in the ALJ's failure to properly analyze plaintiff's credibility was not harmless and warranted remand); *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). The ALJ's errors in his credibility assessment therefore require remand.[8]

## V. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 16) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 20) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

---

[8] Given the need for remand on this ground, the court need not resolve plaintiff's contention that the ALJ improperly assessed medical source opinions in the record. On remand, the Commissioner should ensure that her decision clearly indicates the weight assigned the medical source opinions in the record and the reasons for assignment of such weight. *See, e.g.*, Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6 (9 Aug. 2006); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5 (2 July 1996); 20 C.F.R. 404.1527(c)(2).

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 22 August 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 8th day of August 2017.

James E. Gates
United States Magistrate Judge